## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

My Pillow, Inc., DBA MyPillow,

Plaintiff,

v.

US Dominion, Inc., Dominion Voting
Systems, Inc., and Dominion Voting
Systems Corporation,

Defendants.

Court File No. 21-CV-01015-PJS-DTS

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO STAY
## OR EXTEND TIME TO RESPOND TO COMPLAINT

On April 19, 2021, MyPillow[1] filed the Complaint in this case. ECF No. 1.

Defendants were served separately – two of Defendant corporations on April 21,

2021 and the other Defendant corporation on April 28, 2021. ECF Nos. 4-6. Shortly

thereafter MyPillow voluntarily agreed at the request of Dominion's counsel to

extend the time to answer from May 12 and May 19 (for separate Defendants) to

June 21 (for all Defendants), providing Dominion more than an extra month of

time to respond to the Complaint. ECF No. 8. Consistent with this extended

---

[1] "MyPillow" is used to reference My Pillow, Inc. and "Dominion" is used to
reference US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion
Voting Systems Corporation collectively.

schedule, this Court granted a consent motion, giving Dominion a total of approximately sixty days before a responsive pleading was required. ECF No. 11.

On June 4, 2021, Dominion filed this motion, seeking an indefinite stay of this lawsuit until some time following resolution of a motion to dismiss filed in a defamation lawsuit brought several months ago in D.C. federal district court by Dominion against MyPillow.[2] Dominion waited more than six weeks to file this motion seeking further delay.

## LEGAL STANDARD

The Federal Rules of Civil Procedure should be administered to secure "just, speedy, and inexpensive determination" of an action. Fed. R. Civ. P. 1. A request to stay proceedings is "extraordinary relief, and the requesting party 'must make out a clear case of hardship or inequity.'" *Haworth v. New Prime, Inc.*, 448 F.Supp.3d 1060, 1064 (W.D. Mo. 2020) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)) (emphasis added). "[S]tays of litigation are the exception, not the rule." *Spencer Ung v. Universal Acceptance Corp.*, No. CV 15-127 (RHK/FLN), 2016 WL 9307090, at *1 (D. Minn. June 15, 2016) (emphasis added). The requesting party must show that it will suffer **specific hardship or inequity** if it is required to move forward in the action. *See 4Brava, LLC v. Sachs*, No. CV 15-2743 (JRT/DTS), 2018 WL 2254568,

---

[2] *See* Def. My Pillow, Inc.'s Mot. to Dismiss, *US Dominion, Inc. v. My Pillow, Inc.*, no. 1:21-cv-00445-CJN (D.D.C. Apr. 19, 2021) (ECF No. 30).

at *2 (D. Minn. May 17, 2018) (citing *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (emphasis added)); *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 891 (D. Minn. 2015).

In deciding whether a stay is appropriate, the Court should weigh the parties' competing interests. *Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 890. As a general matter, a District Court has a "duty . . . to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). "Because a stay has the potential to damage the nonmoving party, a district court should exercise its discretionary power to stay proceedings in moderation." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1007 (D. Minn. 2018). There is a "presumption favoring the party opposing a stay." *Id*. (citing *Jones*, 72 F.3d at 1365).

## ARGUMENT

Dominion fails to carry its burden to show that it will suffer specific hardship or inequity in the absence of a stay. It fails even to show any weight of competing interests supporting a stay. Its arguments in fact do not even attempt to address these considerations. It instead (1) advances an inaccurate assertion that this action is only an echo of a D.C. lawsuit it filed against MyPillow and (2) speculates that unidentified, unstated, and apparently nonexistent common issues

between the D.C. action and this action may need to be resolved in the future. Its assumption is incorrect and its speculations are insufficient to make the point.

### A. Dominion's arguments for further delay due to the D.C. action are inaccurate and do not support a stay.

Dominion advances three arguments for further delay, but all three are essentially the same. Dominion claims its lawsuit in D.C. so overlaps MyPillow's claims here that this action should get in line behind the D.C. action and not be allowed to proceed until after a ruling on the motion to dismiss in the D.C. action is issued. ECF No. 24 at 5-6. This case, however, is not overlapping with Dominion's D.C. lawsuit. *Regardless of whether Dominion's defamation claims in D.C. are dismissed,* Dominion will need to answer MyPillow's central claims in this Court under 42 U.S.C. § 1983 that Dominion is a state actor that violated the Constitution and illegally retaliated against MyPillow by executing a campaign of publicity, threats, pressure, and intimidation that resulted in damage to MyPillow's relationships with commercial and advertising partners and damage to its employees' ability to work. *See* Compl. ¶¶ 88-112 (ECF No. 1). Similarly, *regardless of whether Dominion's defamation claims in D.C. are dismissed,* Dominion will need to answer MyPillow's claim in this Court of tortious interference with prospective economic advantage, based, in important part, on the above-mentioned acts. *See id.* ¶¶ 113-121.

The issues before this Court do not substantially duplicate those before the U.S. District Court for the District of Columbia. The issues in the two cases are not the same. The matters do not interact in the same manner as the question of an alleged fraudulent conveyance litigated in a separate bankruptcy proceeding affects the resolution of the intellectual property claims before the court in the case relied upon by Dominion, *Kemp v. Tyson Seafood Group, Inc.*, 19 F.Supp.2d 961, 965 (D. Minn. 1998) ("Since Superior and Quality's claim to the use of the 'Louis Kemp' name is solely derived from the 1991 transfer, this entitlement, as well as the Plaintiff's standing to litigate any remaining claims in this action, are rights which are inextricably tied to Dye's pending fraudulent conveyance claim in the Bankruptcy Court.").

Moreover, Dominion's implication that a ruling in the D.C. action will somehow greatly modify or alter its obligations in this action is unfounded. Whatever connections the two actions may have are heavily outweighed by their differences, and are certainly not sufficient reason to freeze one action while the other proceeds.

- Dominion alludes to unspecified "questions this Court will need to resolve in connection with Dominion's anticipated response to the present complaint" which the D.C. action purportedly "bear[s] on." ECF No. 24 at 5. If such questions exist (they do not), the appropriate

manner of handling them is for Dominion to answer the Complaint and then file a motion seeking relief specifically related to those particular issues – not to stay this action indefinitely without even identifying the issues.

- Dominion refers to consolidation of this action with another action filed by Michael Lindell against Dominion, not even yet served. *Id*. at 6. Dominion offers no explanation why the consolidation of another action in Minnesota should prompt the Court to stay *this* action. The consolidation does not create a basis to stay MyPillow's action.

- Dominion claims "this Court would be required to opine on the constitutionality of the D.C. Action without knowing how the D.C. court views it." *Id*. That is simply inaccurate. Dominion identifies no reason that would cause this Court to be so required. The central issue in the motion to dismiss Dominion's D.C. action is whether Dominion's defamation claims are barred by the First Amendment. MyPillow's claims here allege that Dominion illegally retaliated against MyPillow by executing a campaign of publicity, threats, pressure, and intimidation that resulted in damage to MyPillow's relationships with commercial and advertising partners and damage to its employees' ability to work. *See* Compl. ¶¶ 88-112 (ECF No. 1).

6

There is no issue that exists that would require this Court to "opine on the constitutionality of the D.C. action." If there were, Dominion should have identified it. If one arises in the future (which will not happen) Dominion can then bring its motion to deprive MyPillow of its right to prosecute its legitimate civil claims.

**B. Dominion does not meet its burden of showing "specific hardship or inequity."**

Dominion's memorandum in support of its motion does not mention any hardship or inequity it will suffer if an indefinite stay is not granted. In fact, the words "hardship," "inequity," or any similar word do not even appear in the memorandum. *See* ECF No. 24. This is a requirement on any request for a stay and is fatal to Dominion's motion. Certainly Dominion makes no showing of any *specific* hardship or inequity. Instead, it directs its arguments toward suggesting that a decision from the D.C. court might affect this Court's rulings on various (unspecified) hypothetical issues that might some day come before it. Whatever the validity of these claims – there is little, as explained above – they do not implicate the burden that the law establishes as determinative concerning a motion for a stay. *See 4Brava, LLC*, 2018 WL 2254568, at *2 ("The party requesting 'a stay has the burden of showing specific hardship or inequity if he or she is required to go forward.'") (quoting *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996)).

**C. The Court should deny Dominion's motion for further indefinite delay because MyPillow has a right to have its claims adjudicated and injuries redressed promptly.**

Litigation in federal courts is intended to accomplish "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Procedural steps designed to promote just determination are necessary, but they exist in inherent tension with the goal of speedy determination. Nearly every defendant would prefer to postpone resolution of the action against it as long as possible, simply to defer any potential judgment. Case deadlines exist in part to prevent defendants from foot-dragging, and every request by a defendant to postpone a deadline opens the door to foot-dragging. Here, Dominion's deadline to answer the Complaint has already been pushed back a month, and Dominion waited until June 2021 to seek to stay this action despite having full knowledge of the D.C. motion to dismiss since April 19, 2021. MyPillow's right to receive a prompt hearing concerning the injuries Dominion has inflicted upon it demands that no further delay be imposed.

Dominion has failed to identify any hardship or inequity it would suffer if required to proceed with this action, which has already been delayed at its request. It has failed to carry its burden. Furthermore, weighing the interests of the parties, MyPillow's interest as a plaintiff in obtaining expeditious resolution of its claims is plainly more important than Dominion's desire to delay and postpone

adjudication of this matter due to unknown, undisclosed, speculative, future hypotheticals that cannot be responded to because they cannot and have not been identified.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendants' motions and maintain a proper schedule for the adjudication of Plaintiff's rights.

**PARKER DANIELS KIBORT LLC**

Date: June 11, 2021              *s/ Andrew D. Parker*
                                         Andrew D. Parker (195042)
                                         Joseph A. Pull (386968)
                                         Gregory N. Arenson (398276)
                                         Abraham S. Kaplan (399507)
                                         888 Colwell Building
                                         123 North Third Street
                                         Minneapolis, Minnesota 55401
                                         Phone: (612) 355-4100
                                         Fax: (612) 355-4101
                                         parker@parkerdk.com
                                         pull@parkerdk.com
                                         arenson@parkerdk.com
                                         kaplan@parkerdk.com

                                         *Attorneys for Plaintiff My Pillow, Inc.,*
                                         *DBA MyPillow*