UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| My Pillow, Inc., | Case No. 21-cv-1015 (PJS/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| US Dominion, Inc. et al., | |
| Defendants. | |

This case is one of several ongoing federal actions between My Pillow, or its owner, Michael Lindell, and US Dominion, or one of its affiliated entities (Dominion). *E.g.*, *US Dominion, Inc. et al. v. My Pillow, Inc. et al.*, No. 1:21-cv-445 (D.D.C. filed Feb. 22, 2021); *My Pillow, Inc. v. US Dominion, Inc. et al.*, No. 21-cv-1015 (D. Minn. filed Apr. 19, 2021); *Lindell v. US Dominion, Inc. et al.*, No. 21-cv-1332 (D. Minn. filed June 3, 2021). Dominion moves to stay answering the complaint in this case, arguing that because of the ongoing litigation in the District of the District of Columbia (the D.C. action), efficiency and conservation of resources compel the stay. Defs.' Mem. 1, Dkt. No. 24. Staying this action pending the resolution of certain motions in the D.C. action, however, will have little, if any, impact on efficiency and conservation of resources. Consequently, the motion to stay is denied.

**FACTS**

Dominion develops voting machine software and hardware and its products were used in the 2020 election. On February 22, 2021, Dominion sued My Pillow, Inc. and Michael Lindell for defamation and deceptive trade practices in the District of Columbia stemming from Lindell's comments questioning the legitimacy of the 2020 presidential

1

election and suggesting that Dominion was responsible for "stealing the 2020 election." Compl., D.D.C. Dkt. No. 1.

On April 19, 2021, My Pillow filed this suit against Dominion, pleading claims of First and Fourteenth Amendment violations and reprisal under Section 1983, tortious interference with contractual relations, and abuse of process. Compl., Dkt. No. 1. My Pillow alleges that Dominion has engaged in an unlawful campaign (dubbed "lawfare") intended to intimidate My Pillow and its suppliers and customers by threatening and commencing litigation against "anyone who speaks out against Dominion's work on behalf of the government in administering the election." Compl. ¶ 2. Those threats, retaliatory tactics, and abusive lawsuits, My Pillow alleges, is reprisal against entities or individuals—like My Pillow or Lindell—who have spoken out against Dominion in an effort to "restore integrity to the election process." Compl. ¶¶ 2–4. My Pillow's allegations stem, in part but not exclusively, from Dominion's commencement of the D.C. action. On the same day My Pillow filed this action, it also moved to dismiss the D.C. action for failure to state a claim, lack of personal jurisdiction, and improper venue. D.D.C. Dkt. No. 30 at 1. The parties have briefed that motion and the D.C. court heard the motion on June 24, 2021. D.D.C. Dkt. No. 39.

A week before Dominion's answer to the Complaint in this matter was due (May 19, 2021) the parties stipulated to extend Dominion's time to respond until June 21, 2021. Defs.' Mot. Extn., Dkt. No. 8. This Court granted that extension. Order, Dkt. No. 11. Dominion now asks that this Court stay its deadline to answer the complaint until the D.C. court resolves My Pillow's motion to dismiss, or, alternatively, grant another thirty-day extension. As discussed below, the motion is denied.

**ANALYSIS**

**I.      Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006). This discretion requires courts to exercise "judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254; *Cottrell*, 737 F.3d at 1248. The Supreme Court has cautioned moderation in granting stays of litigation. *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-md-2090, 2013 WL 6533154, at *1 (D. Minn. Dec. 13, 2013) (quoting *Landis*, 299 U.S. at 255).

The proponent of a stay, here Dominion, bears the burden of establishing its necessity. *Clinton*, 520 U.S. at 708; *Kreditverein der Bank Austria v. Nejezchleba*, 477 F.3d 942, 945 n.3 (8th Cir. 2007). This burden requires Dominion to show a specific hardship or inequity that would result if the Court denied the stay and ordered Dominion to proceed with the litigation. *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (Beam, J., concurring) (citing *Landis*, 299 U.S. at 254–56). Courts have interpreted the movant's burden to be so substantial as to create a presumption favoring the party opposing the stay. *Id.* at 1365.

Several factors influence a court's decision to stay proceedings, such as docket control, conservation of judicial resources, and actions that facilitate just determination of

3

pending cases, *Edens v. Volkswagen Grp. of Am., Inc.*, No. 16-cv-750, 2016 WL3004629, at *1 (D. Minn. May 24, 2016), but the court must also examine "1) the plaintiffs' private interest in proceeding expeditiously with civil litigation balanced against the prejudice against the plaintiffs if delayed; 2) the private interests of, and burden on, the defendants; 3) the interests of the Courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest," *KK Motors, Inc. v. Brunswick Corp.*, No. 98-cv-2307, 1999 WL 246808, at *1 (D. Minn. Feb. 23, 1999). Ultimately, the decision whether to stay a case is discretionary. *Smith v. S.E.C.*, 129 F.3d 356, 362 (6th Cir. 1997) ("When a federal court is presented with . . . a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit.").

## II.     Parallel Litigation

Dominion encourages the Court to stay this action because it substantially overlaps with the D.C. action—the first-filed lawsuit—which raises the threat of "duplicative litigation."[1] Parallel litigation exists when "substantially the same parties litigate substantially the same issues in different forums." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013).[2] The first-to-file doctrine, which governs how courts manage parallel federal litigation, is a generally recognized doctrine of comity

---

[1] At the hearing on its motion to stay, Dominion suggested that this action and the D.C. action were so overlapping that My Pillow was required to bring its claim as a compulsory counterclaim, Fed. R. Civ. P. 13(a); *St. Jude Med., Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 594 (8th Cir. 2001), but stopped short of asserting this as an independent grounds for a stay.

[2] *See Wright v. Walden University, LLC*, Nos. 16-cv-4037 & 16-cv-4402, 2017 WL 1435717, at *2 n.5 (D. Minn. Apr. 21, 2017) ("Although *Lexington* addressed the power of federal courts to stay actions pending parallel state litigation, the . . . same reasoning applies to two federal suits in different forums.").

4

among federal courts. *See Smith v. McIver*, 22 U.S. (9 Wheat) 532, 535 (1824). To conserve judicial resources and avoid duplicative litigation or inconsistent rulings, this prudential rule permits a federal court to stay litigation where another federal court, having concurrent jurisdiction in an action that was filed first, has priority to consider the case. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). Generally, parties are not permitted to maintain overlapping litigation in multiple federal courts, so managing "duplicative claims comports with [the] long-standing general principle of avoiding duplicative litigation." *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011); *see Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001) (stating that "[p]laintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time" and that "federal courts may decline to exercise their jurisdiction in order to prevent [such] duplicative litigation").

The first-to-file doctrine, however, is not an uncompromising rule of chronology, but gives courts discretion to manage overlapping litigation by dismissing, staying, or transferring a duplicative case. *Nw. Airlines, Inc.*, 989 F.2d at 1005 ("This first-filed rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice."); *Sondel v. Nw. Airlines, Inc.*, 56 F.3d 934, 938 (8th Cir. 1995) ("Pursuant to the first-filed rule, a district court has the discretion to dismiss the later action . . . or transfer it if an action involving the same parties and issues was earlier-filed in a different district."). Parties may overcome the presumption favoring the first-filed litigation using the same factors courts consider when determining whether a change of

venue is appropriate: the interest of justice and convenience of parties and witnesses. *See* 28 U.S.C. § 1404(a).[3]

No definitive standard exists to determine which cases are sufficiently overlapping or duplicative to warrant a stay. Many courts look to whether there is "substantial overlap" between the various actions, *see, e.g.*, *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999), or whether the cases are "substantially similar," *see, e.g.*, *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Coll. Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *Futurewei Tech., Inc. v. Acacia Research Grp.*, 737 F.3d 704, 707 (Fed. Cir. 2013); *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 502 Fed. Appx. 201, 204 (3d Cir. 2012). The rule does not, however, apply to actions simply sharing common questions of fact. *See Conrad v. Colvin*, No. 14-cv-336, 14-cv-338 & 14-cv-483, 2015 WL 4094244, at *6 (D. Minn. July 7, 2015) (analyzing first-filed rule only in terms of overlapping parties and claims).

### A.     Similarity of the Parties

Apart from Dominion naming Lindell as a co-defendant in the D.C. action, the parties are identical. But there is no requirement that the parties be identical; there must only be some commonality or privity between the parties. *Oleg Cassini, Inc. v. Serta, Inc.*,

---

[3] *See Nw. Airlines, Inc.*, 989 F.2d at 1006–07; 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3854 ("Exceptions to the first-filed rule apply when the [28 U.S.C.] Section 1404(a) factors weigh in favor of giving priority to the second action. Thus, courts have found exceptions to the first-filed rule based on forum shopping, anticipatory conduct, or when other special circumstances justify giving priority to the second action.").

6

No. 11-cv-8751, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) ("For the rule to apply, the claims, parties, and available relief must not significantly differ between the actions. . . . [T]he named parties need not be entirely the same provided that they represent the same interests." (cleaned up)); see *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 868 F.3d 661, 664 (8th Cir. 2017) ("[T]he [abstention] standard does not require precise identity between the parties and actions; abstention can be warranted when proceedings are duplicative because of the overlapping issues and parties.").

B. **Similarity of the Claims**

Unlike the parties, the claims of the parties are not so similar and Dominion provides this Court with little support that such claim similarity exists. Dominion sued My Pillow in the District of Columbia for defamation and deceptive trade practices, claims arising out of Lindell's alleged comments about the accuracy and reliability of Dominion's voting machines. Lindell's comments allegedly conveyed that Dominion was responsible for "stealing the 2020 election" because there was "100% proof" that "the algorithms broke" in "the Dominion machines" "on election night." Compl. 29, D.D.C. Dkt. No. 1. Because Dominion's machines were "the biggest cheat, the biggest steal," Lindell stated, Dominion was responsible for "vote fraud in the recent election." *Id.* ¶¶ 94, 100.

In this action My Pillow alleges that Dominion's contracts with various governments to administer public elections renders it a governmental actor, in which capacity Dominion has used "aggressive litigation, threats of litigation, and publicization of these activities . . . [to] stop criticism of election voting systems and suppress information about how its machines have been hacked in American elections." Compl. ¶¶ 24–29, 70, Dkt. No. 1. My Pillow alleges that Dominion's actions since the 2020 election—including its D.C.

7

litigation—"censor, attack, and destroy anyone who questions the 2020 election and voting machine hacking and manipulation." *Id.* at 31. My Pillow argues that the initiation of the D.C. action is only one example of Dominion's conduct, and that there is considerable additional conduct by Dominion for which My Pillow has brought suit.

Though this lawsuit and the D.C. action are connected and the claims in each are factually related, they are legally distinct. At the hearing, Dominion was unable to articulate any substantial similarity or overlap between the claims. *Olson v. Brott*, No. 09-cv-790, 2009 WL 4912135, at *6 (D. Minn. Dec. 11, 2009) ("If . . . the record action does not involve the same . . . controversy as the first, the rule against duplicative litigation will not apply . . ."). Accordingly, it does not appear to this Court that the lawsuits are truly duplicative even though they may not be entirely unrelated. Dominion argues that conserving both judicial and litigant resources and avoiding inconsistent rulings requires a stay here. Thus, regardless whether the actions are or are not truly duplicative, this Court will analyze whether efficiency and consistency compel a stay.[4]

### III.   Balance of Interests

Though Dominion asserts there is substantial overlap between this case and the D.C. action, it does not explain how they are similar or why they overlap—it just concludes that they are. *See* Defs.' Mem. 5–9, Dkt. No. 24.

---

[4] As explained above, many factors courts consider in deciding whether to stay litigation focus on judicial economy, such as docket control and conserving judicial resources. But courts balance those interests only after determining that the litigation is duplicative (i.e., that there is substantial overlap). *See, e.g.*, *QFO Labs, Inc. v. Best Buy Stores, L.P.*, Nos. 17-cv-5011, 17-cv-5012 & 17-cv-5014, 2018 WL 3966313, at *5–7 (D. Minn. Aug. 17, 2018) (balancing the interests to decide whether to dismiss, transfer, or stay the duplicative litigation only after first finding that the cases substantially overlapped).

First, Dominion argues that "a stay will conserve judicial resources and avoid the inevitable inefficiencies that will result in allowing these overlapping matters to proceed in parallel." *Id.* at 5. Supporting that argument, Dominion gives the example that the D.C. court "will need to address the legal sufficiency of Dominion's defamation claim against My Pillow and Lindell" and "resolve questions about personal jurisdiction and venue." *Id.* From this, it concludes that the D.C. court's resolution of those questions will impact the legal issues this Court will need to address. *Id.* But again, Dominion does not explain how that is or how staying this action will conserve resources.

This Court sees the matter differently. To illustrate, if the D.C. court dismisses the D.C. action for failure to state a claim or lack of personal jurisdiction, Dominion will necessarily need to respond to the complaint here. If the D.C. court denies the motion to dismiss the D.C. action, this lawsuit will still exist and Dominion must still respond to the complaint in some fashion. The heart of Dominion's argument seems to be a concern arising out of the possibility of venue transfer. But again, this concern is largely illusory. If the D.C. court denies transfer, this action exists independent of the D.C. action. If the D.C. court transfers that action to the District of Minnesota, Dominion will still have to respond to My Pillow's claim here even if the cases are later consolidated.

Dominion also posits the possibility of dueling motions to transfer with the D.C. action being transferred here and this action being transferred to D.C. The specter of this highly unlikely occurrence is no ground on which to stay the present action. Even if Dominion were to file a motion to transfer this action to the district court in D.C., this Court has little doubt that the district judge in D.C. and the district judge here will find a way to avoid conflicting transfers.

Dominion's argument may stem from a belief that My Pillow's action here turns on the merits of the D.C. action. *See* Defs.' Mem. at 5, Dkt. No. 24 (". . . Dominion's defamation [suit] against My Pillow and Lindell (which, again, is the purported basis for My Pillow's suit here)"). But My Pillow's claims here stem from a whole series of actions by Dominion that include, but are by no means limited to, its commencement of the D.C. action. Beyond the filing of the D.C. action, My Pillow pleads that Dominion has engaged in an orchestrated campaign of intimidation and aggressive litigation, all of which are separate from the filing of the D.C. action. *E.g.*, *id.* ¶¶ 7, 8, 10, 70. Indeed, My Pillow references the D.C. action in only one of the five claims it pleads: abuse of process (Count 5). Compl. ¶¶ 122–131. In short, any issues this Court would need to resolve, at this stage of the case, are substantially different from those which the D.C. court will likely address on the motion currently pending.

Dominion next argues that a "stay will assist the Court in controlling its docket." *Id.* For this, it cites My Pillow's other case in this District and highlights that Lindell has not yet served Dominion in that action. It argues that the Court will need to "consider whether to consolidate these related cases and set a briefing schedule that jointly and efficiently manages the Court's resources and docket and allows for a streamlined and efficient schedule." *Id.* at 5–6. Though this may be true, it does not follow that staying this matter pending the motion in the D.C. action somehow enhances the Court's management of this concern. The argument is a non- sequitur. Dominion must nonetheless respond to the claims raised in both Minnesota complaints and no motion for consolidation has been filed. Whatever marginal efficiency, if any, is gained by granting Dominion's stay on this ground is an insufficient reason to delay this action (which Dominion's motion expressly

ties to the resolution of the D.C. motion). The existence of the unserved Minnesota complaint does not create complexities in docket management that exceed this Court's capabilities.

Finally, Dominion argues that "a stay will advance the just determination of this case." *Id.* at 6. It alleges that if this case were to proceed independent of the D.C. action, a merits decision here would require this Court to evaluate the merits of the D.C. action. *Id.* As support for this assertion, Dominion argued at the hearing that cases in this District are trial ready sooner than cases in the District of the District of Columbia. Once again, Dominion has concocted a scenario that is unlikely to occur and, should it threaten to do so, is not beyond this Court's ability to properly manage its docket when and if the time comes.

The D.C. action is one component of the claims My Pillow pleads here. If the D.C. court dismisses the D.C. action, that may (or may not) bolster My Pillow's abuse of process claim. If the D.C. court denies the motion to dismiss at the pleading stage, that fact may (or may not) be of significance to this Court when and if it is called upon to resolve the merits of My Pillow's abuse of process claim. Either way, at present, Dominion has neither filed a motion to dismiss this claim nor even represented to this Court that it will do so. Again, when and if there is an actual risk of inconsistent rulings based on legal arguments raised in actual court filings, this Court and the D.C. court will no doubt find a way to engage in the comity which may then be necessary. In the meantime, this Court will not prejudice Plaintiff's right to prosecute this action based on purely hypothetical concerns that have not materialized. At present, there is no good reason to stay Dominion's obligation to respond to this complaint.

Balanced against the marginal efficiency to be gained by staying Dominion's response to the complaint (if extant at all) is the inherent prejudice to Plaintiff of granting this stay of unknown duration. Stays of litigation are inherently prejudicial to a plaintiff. *Jones*, 72 F.3d at 1363 (Beam, J., concurring). Here, there is no discernable benefit to be gained that will offset this prejudice. When and if the progress of this case and of the D.C. action collide or create a significant inefficiency or risk of inconsistent rulings, the question of a stay can be revisited. Whenever that day comes, if it does, it is not today.

Staying litigation is the exception, not the rule, and Dominion has offered no compelling justification to stay it answering the complaint. Similarly, this Court finds no appreciable risk of inconsistent rulings and no great waste of judicial or litigant resources to warrant a stay.

## IV.    Extension

Alternatively, Dominion asks that this Court extend its deadline to answer for thirty days after the Court issues this order. Defs.' Mot. at 2, Dkt. No. 22. Under Federal Rule of Civil Procedure 6(b), a court may exercise its discretion and extend a deadline "for good cause." Courts evaluate good cause on case-by-case basis and there is no concrete definition of what constitutes good cause. *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-mdl-2795, 2019 WL 4082945, at *2 (D. Minn. Aug. 29, 2019). Dominion's answers were due, at the latest, on May 19. *See* Dkt. Nos. 4–6. At Dominion's request, Plaintiff stipulated to extend Dominion's time to answer more than a month, to June 21. Defs.' Mot. Extn., Dkt. No. 8. As of the date of this order Dominion has already had the complaint in this action for more than 60 days.

Dominion has offered no good cause to delay its response to the complaint for another 30 days when it has already had the complaint for two months. The request for an additional 30 days is denied.

## ORDER

For these reasons, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Stay [Docket No. 22] is **DENIED**.

2. Defendants' Motion to Expedite Hearing [Docket No. 21] is **DENIED AS MOOT**.

3. Defendants shall respond to the complaint by July 6, 2021.

Dated: June 28, 2021                                         __s/David T. Schultz_____
                                                             DAVID T. SCHULTZ
                                                             United States Magistrate Judge